[Cite as *State v. Illing*, 2022-Ohio-4266.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220166 |
| | | TRIAL NO. B-2104768 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| PATRICK ILLING, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 30, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, L.P.A.*, and *Scott A. Rubenstein,* for Defendant-Appellant.

**Bock, Judge.**

{¶1}    Defendant-appellant Patrick Illing appeals the trial court's judgment, arguing that (1) his plea was not made knowingly, intelligently, and voluntarily, (2) he received the ineffective assistance of counsel, and (3) the trial court's sentence was not supported by the record. We affirm the trial court's judgment.

## I.    Facts and Procedure

{¶2}    Illing was indicted for rape under R.C. 2907.02(A)(1)(c), sexual battery under R.C. 2907.03(A)(2), and sexual battery under R.C. 2907.03(A)(3). The victim, N.R., was 19 years old, a friend of Illing's son, and Illing's employee. Illing was accused of providing N.R. with a substantial amount of alcohol and sexually assaulting N.R. while he was passed out from intoxication in Illing's basement. Illing pled guilty to sexual battery under R.C. 2907.03(A)(2), a third-degree felony. The state dismissed the remaining counts.

{¶3}    The court engaged in the Crim.R. 11 colloquy, pausing after each factor to confirm that Illing understood. The court informed Illing that his guilty plea meant that he was admitting the facts of the offense as true and his full guilt. It advised Illing of the constitutional rights that he was foregoing by pleading guilty. The court explained the minimum and maximum sentences, fines, postrelease control, consequences of violating postrelease control or being indicted on a new felony, and Illing's requirement to register as a Tier III sex offender.

{¶4}    The court asked Illing if anyone had made promises or threats that would induce or force him to plead. He responded, "No, sir." The court stated, "Do you understand that there's no promise of a particular sentence, and the Court could

proceed with judgment and sentence you immediately after your plea?" Illing responded, "Yes, sir," and entered his guilty plea.

<u>The trial court sentenced Illing</u>

{¶5} Illing asked for the court's "leniency" and "mercy," requesting a period of probation and home incarceration and noting that "the Ohio legislature codified this offense not to have a presumption of prison for a reason." Illing argued that he should not be subject to prison time as he had no criminal record, was fully cooperative with police, had made a full confession, and "felt extreme remorse."

{¶6} Illing told the court that he runs a successful business where his employees described him as a "great boss" that they "deeply care about" and were "also joining in our request for probation." Illing had engaged in therapy "[b]efore [the parties] reached this plea agreement," which he "was doing all * * * on his own" despite "facing mandatory time" to address the sexual abuse that Illing had "suffered from as a child" and his "self-coping mechanisms." Illing said that his sons could attest that Illing's therapy had "affected their entire family for the better." Illing admitted that he reached out to N.R. during the pendency of the case and said it was inappropriate to do so.

{¶7} Detective Ruwe, who investigated the case, stated that, although Illing was cooperative, it did not "change what happened." Ruwe emphasized that Illing not only recorded the act, but also retained the recording and still shots of it on his phone "over a year later," which told Ruwe that "he didn't want to get rid of it." Ruwe stated, "Yes, once we arrested him, he wanted to get rid of it, but by then it was a little too late. There were other pictures on his phone that were disturbing. He enjoyed taking pictures of [his employees], and not full-body photos, just certain areas * * * employees

either bent over * * * and things like that." He added that the victim "obviously had no idea about this until it was brought to his attention" and described N.R.'s reaction as an "entire range of emotions for him," "upset," "scared," and "nervous" after seeing the recording "over a year later."

{¶8} N.R.'s grandmother stated that N.R. had tried to commit suicide after discovering that he had been sexually assaulted. She added that N.R. had been bullied at school before and abused by his previous stepfather. She further stated that N.R. trusted Illing and now has to deal with the effects of this emotional and physical abuse "for the rest of his life also."

{¶9} N.R. did not address the court. The state explained that Illing was in a position of trust to N.R. because he was N.R.'s employer and the father of N.R.'s friend. The state reported that N.R. had gone to sleep in Illing's basement when Illing assaulted him. The state echoed Detective Ruwe's statements regarding "multiple other photos on the iPad or iPhone that were troubling."

{¶10} The court explained to Illing the purposes and principles of sentencing, stating that it is to "protect the public from future crime, to punish the defendant, but also to promote the effective rehabilitation of the defendant" by using minimum sanctions to accomplish the statute's purposes. The court found that, while Illing had no criminal record, it had to look at the seriousness factors in R.C. 2929.12(B). It noted that N.R. had suffered "serious psychological harm" and would carry the effect of Illing's actions for the rest of his life.

{¶11} The court pointed to the "position of trust" that Illing had with N.R. and that Illing had recorded the act and kept the recording for more than a year. It stated that the victim-impact statement reflected that Illing had groomed N.R., and

4

therefore, Illing intended to commit the act. The court found that these factors outweighed Illing's risk of recidivism and imposed a 24-month sentence in the Ohio Department of Rehabilitation and Correction.

## II. Law and Analysis

### A. Illing's plea was made knowingly, intelligently, and voluntarily

**{¶12}** To determine whether a plea was entered knowingly, intelligently, and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Foster*, 2018-Ohio-4006, 121 N.E.3d 76 (1st Dist.), quoting *State v. Tutt*, 2015-Ohio-5145, 54 N.E.3d 619, ¶ 13 (8th Dist.).

**{¶13}** Crim.R. 11(C)(2)(a) requires the trial court to determine whether the defendant is entering the plea voluntarily, with an understanding of the effect of the plea, knows that the court may proceed to judgment and sentencing, and understands the nature of the charges and the maximum penalty involved. The term "maximum penalty" refers to "[t]he heaviest punishment permitted by law." *State v. Fikes*, 1st Dist. Hamilton No. C-200221, 2021-Ohio-2597, ¶ 6, quoting *Black's Law Dictionary* 1314 (10th Ed.2014).

**{¶14}** A trial court must strictly comply with the constitutional notifications contained in Crim.R. 11(C)(2)(c). *State v. Green*, 1st Dist. Hamilton No. C-170477, 2019-Ohio-1428.

**{¶15}** A trial court must substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.*; *see State v. Nero*, 56 Ohio

St.3d 106, 108, 564 N.E.2d 474 (1990). "Literal compliance with Crim. R. 11 is certainly the preferred practice, but the fact that the trial judge did not do so does not require vacation of the defendant's guilty plea if the reviewing court determines that there was substantial compliance." *Nero* at 108. Moreover, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977). The test for prejudice is whether the plea would have otherwise been made. *Veney* at ¶ 15.

{¶16}  In his first assignment of error, Illing argues that the trial court erred by accepting his plea where it was based on counsel's assurance that Illing would receive probation. This argument is without merit. The court advised Illing of the sentence that he was facing, asked him if he understood the terms of the sentence, and asked whether he had been promised anything or threatened into pleading. Illing stated that he understood the sentence and that he had not been promised anything or threatened to make the plea.

{¶17}  The trial court substantially complied with Crim.R. 11(C)(2)(a) and (b) and strictly complied with Crim.R. 11 (C)(2)(c). Further, Illing had admitted his culpability to police and later pled guilty to sexual battery, adding nothing to the facts as they were read into the transcript. Illing did not object to the sentence when the court announced it. He did not argue before the trial court that his counsel promised probation. And on appeal, while Illing argues that his plea was "predicated on trial counsel's assurances regarding the anticipated sentence," he does not assert that absent those assurances, he would not have pled guilty. Accordingly, the trial court

correctly determined that Illing entered his plea knowingly, intelligently, and voluntarily. We overrule Illing's first assignment of error.

## B. Illing received the effective assistance of counsel.

{¶18} A defendant who pleads guilty waives all appealable issues, including the right to assert an ineffective-assistance-of-counsel claim, except that the defendant may claim ineffective assistance of counsel on the basis that counsel's deficient performance caused the plea to be less than knowing, intelligent, and voluntary. *State v. Miller*, 5th Dist. Stark No. 2019CA00046, 2019-Ohio-4275, ¶ 13. In such a case, a defendant may prevail only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty and would have insisted on going to trial. (Citations omitted.) *Id.*

{¶19} "To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373, (1989), quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶20} The appropriate remedy for allegations of ineffective assistance of counsel based on facts in the record is an appeal from the verdict. *State v. Mallory*, 8th Dist. Cuyahoga No. 49389, 1985 Ohio App. LEXIS 7256, *2 (Oct. 3, 1985). In an ineffective-assistance-of-counsel claim, an appellant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense, thereby depriving the appellant of a fair trial. *Strickland* at 687. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to

consider the other." *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

{¶21} In Illing's second assignment of error, he argues that he received ineffective assistance of counsel where counsel allegedly advised Illing that probation was guaranteed. Illing does not argue on appeal that there is a reasonable probability that he would not have pled guilty but for this alleged promise. Instead, he merely states that his counsel "cause[d] substantial prejudice" without further explanation or showing how the outcome would have been different but for counsel's alleged deficiency.

{¶22} Moreover, the record is devoid of evidence, testimony, or filings suggesting that Illing pled guilty based on the alleged promise. As such discussions were not a part of the record, and cannot be added to the record on appeal, Illing cannot demonstrate that his counsel's performance was deficient. We overrule Illing's second assignment of error.

## C. The trial court's sentence was proper

{¶23} Illing's third assignment of error argues that the trial court imposed his prison sentence without properly considering the purposes and principles of sentencing or any of the factors set forth in R.C. 2929.11(A)-(B) and 2929.12(A)-(E). Illing asserts that the trial court failed to consider his own trauma as "substantial grounds" to mitigate his conduct, or the fact that the victim-impact statement contained statements from the victim's mother and grandmother, but not the victim.

{¶24} We review criminal sentences under R.C. 2953.08(G)(2), which allows appellate courts to increase, reduce, or otherwise modify a sentence, or to vacate the sentence and remand the matter for resentencing if it clearly and convincingly finds that either the record does not support the sentencing court's findings under relevant

statutory provisions, or the sentence is otherwise contrary to law. *State v. Conley*, 1st Dist. Hamilton No. C-200144, 2021-Ohio-837, ¶ 20.

{¶25} In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, the Ohio Supreme Court held, "R.C. 2953.08(G)(2)(a) clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12 because * * * R.C. 2929.11 and 2929.12 are not among the statutes listed in the provision." *Id.* at ¶ 31. Moreover, a trial court's findings under R.C. 2929.11 and 2929.12 were not reviewable under R.C. 2953.08(G)(2)(b) because "an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 34. The court concluded that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42.

{¶26} R.C. 2929.11 and 2929.12 are not fact-finding statutes, and, absent an affirmative demonstration to the contrary, we presume that the trial court considered them. *State v. Mimes*, 1st Dist. Hamilton No. C-200122, 2021-Ohio-2494, ¶ 9.

{¶27} The trial court imposed the 24-month sentence after considering Illing's actions and the impact that his actions had on the victim and the community. The court explained the principles and purposes of sentencing in detail to Illing. Further, the court generally acknowledged counsel's arguments in favor of probation over prison but imposed its sentence after "looking at the seriousness factors in 2929.12(B)"

and noting that the victim "suffered serious psychological harm," and "mental suffering is considered a physical harm" under R.C. 2929.01(A)(5).

{¶28} The court further stated that Illing "held a position of trust" and "of authority," which was a "relationship with the victim that facilitated the offense." Further, the victim-impact statement indicated that Illing "had groomed the victim, shows the requisite mental intent to commit the act." The court also noted that, although Illing was a sexual-abuse survivor, he "knew better" than to perpetrate the offense on another person who will "carry it with him his whole life."

{¶29} Illing has not shown that the trial court failed to consider the statutory factors. And under *Jones*, this court is not permitted to substitute its judgment for that of the trial court "concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, at ¶ 42. We overrule Illing's third assignment of error.

### III.   Conclusion

{¶30} Illing made his plea knowingly, intelligently, and voluntarily. The trial court substantially complied with Crim.R. 11(C)(2)(a) and (b) and strictly complied with Crim.R. 11(C)(2)(c). Illing did not show that his counsel was ineffective. Finally, Illing did not show that the trial court improperly sentenced him. We affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.