Deters, Judge.
 

 {¶ 1} Defendant-appellant Dorian Foster was indicted for the rape and gross sexual imposition of his stepdaughter. Foster and the state entered into a plea agreement. Foster pleaded guilty to rape. In exchange, the state dismissed the gross-sexual-imposition charge. The trial court sentenced Foster to seven years in prison and informed him of his duty to register as a Tier III sex offender. Foster filed a motion for a delayed appeal, which this court granted.
 

 {¶ 2} In two assignments of error, Foster argues that his guilty plea was not knowingly, intelligently, and voluntarily made because he was not informed that the rape offense carried a mandatory prison term, and that the Ohio Department of Rehabilitation and Correction violated the separation-of-powers doctrine by signifying in its records that his sentence is "mandatory." Finding merit in neither assignment of error, we affirm the judgment of the trial court.
 

 Plea Hearing
 

 {¶ 3} The record reflects that the trial court asked Foster if he had reviewed with defense counsel the entry withdrawing his plea of not guilty and entering a guilty plea to rape, and if he had voluntarily signed the form. Foster replied that he had. The trial court then reviewed the form with Foster, questioning him specifically about his understanding of its contents. Foster acknowledged that he was pleading guilty to rape, which was punishable as a first-degree felony that carried a minimum sentence of three years in prison and a maximum sentence of 11 years in prison. The trial court told Foster that the rape offense did not carry a mandatory prison term, but that it did carry a maximum fine of $20,000. The trial court then informed Foster that by pleading guilty to the rape offense he was subject to classification as a Tier III sex offender.
 

 {¶ 4} Thereafter the trial court stated, "You understand this is not a probation offense, that I'm not considering probation on this case. Do we understand each other?" Foster replied, "Yes." The court went on to state, "And I'm thinking about a penitentiary sentence of anywhere from 3 to 11 years. Do you understand that?" Foster replied, "Yes." Despite this exchange, the trial court read the portion of the plea form stating that "at any point in this sentence, I can give you community control. If you violate any of those conditions, I can give you a longer period of community control probation. I can increase the restrictions on the community control probation. Or sentence you anywhere from 3 to 11 years and community control may last up to five years."
 

 {¶ 5} The trial court then stated, "I want to say this because I don't want you to walk out of this room thinking or having any miscalculations or being misguided. I'm not thinking about probation. * * * Once I lay down a number, that's going to be it. Do we understand each other?"
 

 {¶ 6} Foster inquired, "What is she saying?"
 

 {¶ 7} The trial court then stated, "I'll repeat that. I'm not considering probation at this particular time for you because of the nature of the charge. * * * Do we understand each other, sir?" Foster replied, "Yes. Yes ma'am."
 

 {¶ 8} The trial court told Foster that he had not been very responsive during the plea colloquy, and it was going to give him some time to consider whether he still wanted to plead guilty to the rape offense. The trial court informed Foster that he was entering into a blind plea because he did not know what sentence the court would impose. The trial court told Foster it could impose a prison sentence of anywhere from three to 11 years, and that if he decided to plead guilty it would order a presentence investigation and a court clinic report, and it would listen to both the victim's and the defendant's families before selecting the proper term. The trial court told Foster that it was not thinking about probation or even imposing a minimum prison term and that it would not know how many years it was going to impose until it had seen the presentence investigation and a court clinic evaluation. The trial court then took a short recess.
 

 {¶ 9} Following the recess, the trial court asked Foster if he still wished to plead guilty. Foster told the trial court that, after speaking with his mother, he had decided to proceed with the plea agreement. The trial court then resumed its plea colloquy with Foster. In response to further questioning by the trial court, Foster stated that he was satisfied with defense counsel, he was not under the influence of drugs or alcohol, and he had voluntarily signed the guilty-plea form.
 

 {¶ 10} The trial court informed Foster that by pleading guilty he was waiving certain constitutional rights, including his privilege against self-incrimination, the right to a jury trial, the right to confront his accusers, and the right to require the state to prove his guilt beyond a reasonable doubt. Foster acknowledged his waiver of these constitutional rights, and that his guilty plea was a complete admission to the charge. The assistant prosecuting attorney then read the facts as set forth in the indictment. Thereafter, the trial court accepted Foster's plea and found him guilty of rape.
 

 Sentencing Hearing
 

 {¶ 11} At the sentencing hearing, the trial court told Foster that it had reviewed both the court clinic report and the presentence-investigation report. The trial court then listened to the victim's cousin, grandmother, and aunt, and to Foster's parents. The trial court sentenced Foster to seven years in prison for the rape offense. The trial court did not inform Foster during the sentencing hearing that the seven-year prison sentence was mandatory. The sentencing entry, likewise, did not state that Foster's seven-year sentence for the rape offense was mandatory.
 

 Failure to Notify Regarding Mandatory Prison Term
 

 {¶ 12} In his first assignment of error, Foster argues his guilty plea was not knowingly, intelligently, and voluntarily made because he was not informed at the time that he pleaded guilty that the rape offense carried a mandatory prison sentence that rendered him ineligible for community control, judicial release, and earned days of credit.
 

 {¶ 13} A guilty plea is constitutionally valid only if it is entered knowingly, voluntarily, and intelligently.
 
 State v. Engle
 
 ,
 
 74 Ohio St.3d 525
 
 , 527,
 
 660 N.E.2d 450
 
 (1996). To ensure a no-contest or guilty plea is made knowingly, intelligently, and voluntarily, the trial court must engage the defendant in a colloquy pursuant to Crim.R. 11(C) and inform him of certain constitutional and nonconstitutional rights.
 

 Id.
 

 {¶ 14} The trial court must inform the defendant that by pleading guilty or no contest, he is waiving the following constitutional rights: the privilege against self-incrimination, the right to a jury trial, the right to confront his accusers, and the right of compulsory process of witnesses. Crim.R. 11(C)(2)(c). The trial court must also inform the defendant of certain nonconstitutional rights, including the nature of the charges, the maximum penalty involved, the eligibility of the defendant for probation or community control, and the effect of the plea. Crim.R. 11(C)(2)(a) and (b).
 

 {¶ 15} A trial court must strictly comply with Crim.R. 11 when it explains the constitutional rights set forth in Crim.R. 11(C)(2)(c).
 
 State v. Veney
 
 ,
 
 120 Ohio St.3d 176
 
 ,
 
 2008-Ohio-5200
 
 ,
 
 897 N.E.2d 621
 
 , syllabus;
 
 State v. Ballard
 
 ,
 
 66 Ohio St.2d 473
 
 ,
 
 423 N.E.2d 115
 
 (1981), paragraph one of the syllabus. When a trial court fails to explain these rights, the guilty or no-contest plea is invalid "under a presumption that it was entered involuntarily and unknowingly."
 

 State v. Griggs
 
 ,
 
 103 Ohio St.3d 85
 
 ,
 
 2004-Ohio-4415
 
 ,
 
 814 N.E.2d 51
 
 , ¶ 12.
 

 {¶ 16} A trial court, however, need only substantially comply with Crim.R. 11 when explaining the nonconstitutional rights set forth in Crim.R. 11(C)(2)(a) and (b). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving."
 
 State v. Nero
 
 ,
 
 56 Ohio St.3d 106
 
 , 108,
 
 564 N.E.2d 474
 
 (1990). When a trial court fails to substantially comply with Crim.R. 11 with regard to a non-constitutional right, the plea may be vacated only if the defendant shows prejudice. "The test [for prejudice] is whether the plea would have otherwise been made."
 

 Id.
 

 {¶ 17} A defendant who is required to serve a mandatory prison term is ineligible for probation or community control.
 
 See
 
 R.C. 2929.16(A). Crim.R. 11(C)(2)(a) requires the trial court to inform a defendant about his eligibility for probation or community control. In
 
 Nero
 
 , the Ohio Supreme Court held that "where the circumstances indicate that the defendant knew he was ineligible for probation and was not prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a), the trial court's acceptance of the defendant's guilty plea to the nonprobationable crime of rape without personally advising the defendant that he was not eligible for probation constituted substantial compliance with Crim.R. 11. (
 
 State v. Stewart
 
 , [1977],
 
 51 Ohio St.2d 86
 
 ,
 
 364 N.E.2d 1163
 
 followed)."
 
 Nero
 
 at syllabus. In
 
 Nero
 
 , the defendant's attorney had told the trial court during the plea colloquy that he knew his client would be incarcerated and the defendant had asked the trial court to give him some time to straighten out his affairs.
 
 Id.
 
 at 108,
 
 564 N.E.2d 474
 
 .
 

 {¶ 18} In
 
 State v. Farley
 
 , 1st Dist. Hamilton No. C-010478,
 
 2002 WL 397909
 
 , *1 (Mar. 15, 2002), this court held that the trial court had erred by accepting the defendant's guilty plea to an amended rape charge and one count of gross sexual imposition where the trial court had failed to comply with Crim.R. 11(C)(2)(a). The plea form the defendant had executed had not stated that the prison term for the rape offense was mandatory, or that the defendant was ineligible for probation or community control, and the trial court had failed to orally inform the defendant that he was ineligible for probation or community control.
 
 Id.
 
 at *2
 

 {¶ 19} We acknowledged that to make a voluntary choice, a defendant must act with a full understanding of the consequences of his plea. Because the prospect of probation or community control would be a factor weighing heavily in favor of a plea, we reasoned that the fact that a community-control sanction was statutorily precluded could affect the defendant's decision to enter a guilty plea.
 
 Id.
 
 We held that under the totality of the circumstances, we could not conclude that the defendant, at the time he had entered his guilty plea, had understood that he was ineligible for community control or probation, and we could not be confident that he would have entered his guilty plea had the trial court complied with the rule.
 
 Id.
 

 {¶ 20} Here, Foster's written plea form had the word "none" written under the heading for mandatory prison term. The plea form further provided that "if granted community control/probation at any point in my sentence, I understand that I will be subject to all conditions imposed by Community Control/Probation."
 

 {¶ 21} At Foster's plea hearing, the trial court incorrectly advised Foster that the rape offense did not carry a mandatory prison term. But the trial court expressly told Foster that community control was
 not a sentencing option and that it was planning to impose a prison sentence upon him. Despite these express statements, the trial court proceeded to read from the community-control explanation in the plea form. The trial court then told Foster that it could not tell him the exact prison term it would impose, but that it would be more than the statutory minimum of three years. The trial court then gave Foster an opportunity to speak with his family about the guilty plea. Following the trial court's statements regarding its imposition of a prison term upon Foster, Foster decided to plead guilty to the offense.
 

 {¶ 22} Although the trial court read from the community-control portion of the plea form, Foster can demonstrate no prejudice from the trial court's statements. Here, unlike in
 
 Farley
 
 , the trial court had expressly told Foster multiple times during the plea colloquy that community control was not a sentencing option and that it was planning to impose a prison term. Under the totality of the circumstances in this case, we cannot conclude that Foster's guilty plea was not knowingly, voluntarily, and intelligently made.
 
 See
 

 Nero
 
 ,
 
 56 Ohio St.3d 106
 
 ,
 
 564 N.E.2d 474
 
 .
 

 {¶ 23} The dissent, in arguing that the trial court failed to comply with Crim.R. 11, ignores this court's precedent and does not meaningfully explain why the Supreme Court's opinion in
 
 Nero
 
 mandates a different result. Instead, it relies on case law from other appellate districts that is factually distinguishable. In the cited cases from these districts, the plea form, like the form in
 
 Farley
 
 , contained no information about a mandatory term or contained wrong information and likewise, the trial court either gave wrong information about community control or no information about community control at all. Those districts, like this court in
 
 Farley
 
 concluded that under these circumstances, the defendant could not have appreciated the effect of his plea. Here, however, the trial court expressly told Foster that he would be going to prison. Thus, our conclusion is not inconsistent with the case law cited by the dissent.
 

 {¶ 24} Foster additionally argues that his guilty plea was not knowingly, voluntarily, and intelligently entered because the trial court failed to advise him that he would be ineligible for judicial release and earned days of credit. A defendant who is serving a mandatory prison term cannot apply for judicial release until the expiration of all mandatory prison terms in his stated prison sentence.
 
 State v. Ware
 
 ,
 
 141 Ohio St.3d 160
 
 ,
 
 2014-Ohio-5201
 
 ,
 
 22 N.E.3d 1082
 
 , ¶ 11 ; R.C. 2929.13(F) and 2929.20(A)(1)(a) and (B). A defendant's ineligibility for judicial release, however, is not one of the items in Crim.R. 11(C)(2)(a) that the trial court is required to determine a defendant's understanding of when he or she enters a guilty plea.
 
 State v. Simmons
 
 , 1st Dist. Hamilton No. C-050817,
 
 2006-Ohio-5760
 
 ,
 
 2006 WL 3111415
 
 , ¶ 13, citing
 
 State v. Xie
 
 ,
 
 62 Ohio St.3d 521
 
 , 524-525,
 
 584 N.E.2d 715
 
 (1992). Thus, a trial court is generally not required to inform a defendant about judicial release during the plea colloquy unless judicial release is incorporated into a plea agreement or the defendant can demonstrate that the trial court made some misstatement or misrepresentation about judicial release that he relied upon when entering his plea.
 
 State v. Kinney
 
 , 1st Dist. Hamilton,
 
 2018-Ohio-404
 
 ,
 
 105 N.E.3d 603
 
 , ¶ 22-26 (following
 
 Simmons
 
 and holding the defendant's reliance upon the trial court's erroneous statements about his eligibility for judicial release rendered his guilty plea involuntary).
 

 {¶ 25} Here, the plea form provided: "I understand the maximum penalty as set out above and any mandatory prison term
 during which I am not eligible for judicial release * * *." The trial court never orally discussed judicial release during the Crim.R. 11 plea colloquy. It was not a part of Foster's plea agreement with the state, and Foster has not argued that his eligibility for judicial release was a factor in his decision to plead guilty.
 

 {¶ 26} Likewise, Crim.R. 11 does not require a trial court to notify a defendant that his sentence may or may not be reduced by the statutory provisions providing for earned days of credit. Foster has cited no authority to the contrary.
 
 See
 

 State v. Dowdy,
 
 8th Dist. Cuyahoga No. 105396,
 
 2017-Ohio-8320
 
 ,
 
 2017 WL 4861587
 
 , ¶ 12 ;
 
 State v. Fisher
 
 , 6th Dist. Lucas No. L-15-1262,
 
 2016-Ohio-4750
 
 ,
 
 2016 WL 3574575
 
 , ¶ 17. Foster's guilty-plea form stated the following with respect to such credit: "I understand that I may be eligible to earn days of credit under the circumstances set forth in R.C. 2967.193 of the Ohio Revised Code. I further understand that the days of credit are not automatically earned, but must be earned in the matter specified by law." This language in the plea form was not an incorrect statement of law. The trial court did not discuss earned days of credit during its plea colloquy with Foster. Foster does not argue that his eligibility for earned days of credit was a factor in his decision to plead guilty. Thus, we overrule the first assignment of error.
 

 {¶ 27} In his second assignment of error, Foster argues that the Ohio Department of Rehabilitation and Correction violated the separation-of-powers doctrine by administratively adding the designation "mandatory" to his records without any judicial order requiring such action.
 

 {¶ 28} Foster claims this error is demonstrated by a Department of Rehabilitation and Correction printout appended to his brief. But the printout was not made a part of the record in the trial court, and thus, it is not part of our record on appeal.
 
 See
 
 App.R. 9(A). Materials appended to briefs may not be considered pursuant to App.R. 9(A) and 12(A)(1)(b).
 
 State v. Tekulve,
 

 188 Ohio App.3d 792
 
 ,
 
 2010-Ohio-3604
 
 ,
 
 936 N.E.2d 1030
 
 (1st Dist.) (holding that documents appended to the defendant's brief were not a part of the record on appeal). Foster, thus, cannot demonstrate the error of which he complains.
 
 See
 

 State v. Ishmail
 
 ,
 
 54 Ohio St.2d 402
 
 ,
 
 377 N.E.2d 500
 
 (1978), paragraph one of the syllabus. We, therefore, overrule his second assignment of error, and affirm the judgment of the trial court.
 

 Judgment affirmed.
 

 Mock, P.J., concurs.
 

 Zayas, J., concurs in part and dissents in part.