[Cite as *State v. Cook*, 2024-Ohio-4771.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-240241 |
| | | C-240243 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-2204873-B |
| | | B-2205972 |
| vs. | : | |
| DEMARCUS COOK, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:   Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed and Cause Remanded in C-240241;
Reversed and Cause Remanded in C-240243

Date of Judgment Entry on Appeal: October 2, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg, LLP*, and *Brian T. Goldberg*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant Demarcus Cook appeals two separate judgments of the Hamilton County Court of Common Pleas. First, Cook challenges his conviction for drug-related offenses following a bench trial in the case numbered B-2204873-B. Second, Cook appeals his guilty plea in the case numbered B-2205972. In both cases, Cook takes issue with the sentencing procedures used by the trial court. In total, Cook raises five assignments of error. After considering Cook's arguments and reviewing the record, we affirm the trial court's judgment and remand the cause in the appeal numbered C-240241, and we reverse the trial court's judgment and remand the cause in the appeal numbered C-240243.

### Factual and Procedural Background

#### A. The Case Numbered B-2204873-B

{¶2} On October 14, 2022, Cook was indicted in the case numbered B-2204873-B on charges stemming from an October 6, 2022 traffic stop of a red Honda in which he was a passenger. Cook faced seven counts in total: (1) failure to comply with a police order in violation of R.C. 2921.331(B), a third-degree felony; (2) possession of heroin in violation of R.C. 2925.11(A), a second-degree felony; (3) two counts of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), a second-degree felony; (4) trafficking heroin in violation of R.C. 2925.03(A)(2), a second-degree felony; and (5) two counts of trafficking a fentanyl-related compound in violation of R.C. 2925.03(A)(2), a second-degree felony.

{¶3} Cook's bench trial commenced on December 19, 2023. At trial, the State called Officer Abt of the Cincinnati Police Department to testify to the October 6, 2022 traffic stop. Abt indicated that the red Honda had been the subject of

complaints and that its occupants were suspected of engaging in drug transactions. Abt testified that, when he approached the vehicle, he noticed a strong odor of marijuana. He indicated that Cook and the driver were ordered out of the vehicle.

{¶4} Abt explained that officers then searched the red Honda. Inside, according to Abt, they located a clear plastic bag containing a mix of powdered substances weighing approximately 13.094 grams that was later determined by a lab test to be heroin, fentanyl, and fluorofentanyl. Abt testified that the plastic bag was located in the pocket of the passenger side door in plain view of where Cook had been sitting. Abt added that this quantity was unusual, since, in his experience, most low-level dealers of illegal drugs possess only a gram or two at one time. Abt estimated the value of the drugs to be approximately $1,000.

{¶5} Abt recounted that officers located $4,171 on the driver's person when he was searched and $511 on Cook. Abt also indicated that numerous cell phones were found in the passenger compartment of the car. The State presented Abt's body-worn camera footage ("BWC") showing two cell phones in the same door pocket as the drugs. The BWC also shows one cell phone on the center console and one on the passenger seat where Cook had been seated. Abt testified that possessing numerous cell phones was a frequent occurrence in drug trafficking.

{¶6} Abt indicated that the driver made a statement that the contents of the vehicle belonged to him. Nonetheless, according to Abt, the driver could not recall what specifically was in the car.

{¶7} Abt stated that based on the amount of drugs, the number of cell phones in the vehicle, and the abundance of loose cash on both the driver and Cook, he believed the two were engaging in drug trafficking.

{¶8} Following the bench trial, Cook was found not guilty of Count 1, but guilty of the remaining counts. The counts merged into Count 2 for the purposes of sentencing.

### B. The Case Numbered B-2205972

{¶9} On December 22, 2022, Cook was indicted in the case numbered B-2205972 on six counts: (1) felonious assault in violation of R.C. 2903.11(A)(2), a first-degree felony; (2) tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; (3) obstructing official business in violation of R.C. 2921.3(A), a first-degree misdemeanor; (4) trafficking fentanyl in violation of R.C. 2925.03(A)(1), a fifth-degree felony; (5) trafficking fentanyl in violation of R.C. 2925.03(A)(1), a fifth-degree felony; and (6) failure to comply with an order or signal of police, in violation of R.C. 2921.331(B), a third-degree felony.

{¶10} Pursuant to a written plea agreement, Cook pleaded guilty to counts one, four, and six, and the remaining charges were dismissed. The written plea agreement informed Cook that he might face a possible driver's license suspension. It also stated that any mandatory terms of incarceration must be served prior to and consecutively to any other prison terms. It did not contain information about any specific mandatory consecutive sentences that Cook might face.

{¶11} During Cook's plea colloquy, the trial court did not make any reference to the imposition of mandatory consecutive sentences, nor did it inform Cook that he faced a mandatory driver's license suspension. Before Cook entered his guilty plea, the trial court informed him that "the worst that could happen could be 12 years in prison." The trial court then accepted Cook's guilty plea.

{¶12} On March 26, 2024, the trial court sentenced Cook. In the case numbered B-2204873-B, Cook received a single sentence of eight to 12 years for

Count 2. In the case numbered B-2205972, Cook received a sentence of eight to 12 years on Count 1, 12 months on Count 4, and two years on Count 6, all to run concurrently. By virtue of his conviction for failure to comply in Count 6, Cook was subject to a mandatory consecutive sentence. *See* R.C. 2921.331(D). Cook was also subject to a mandatory driver's license suspension under R.C. 2921.331(E). Despite the mandatory nature of these sentences, the trial court did not impose them. Cook therefore received an aggregate sentence of 16 to 24 years in prison.

{¶13} At the sentencing hearing, the trial court justified its decision that Cook would serve his sentences in the case numbered B-2204873-B and the case numbered B-2205972 consecutively to one another by referencing the dangerous nature of Cook's conduct in both cases, the threat that Cook's conduct posed to the public, and that the charged conduct in the case numbered B-2205972 occurred while Cook was released on bail. The sentencing entries did not include any of these findings.

{¶14} Cook timely appealed.

### *Analysis*

{¶15} On appeal, Cook raises five assignments of error. In his first assignment of error, Cook argues that his conviction in the case numbered B-2204873-B was not supported by sufficient evidence and was against the manifest weight of the evidence. In his second and third assignments of error, Cook claims that his guilty plea in the case numbered B-2205972 was not made knowingly, voluntarily, and intelligently and should therefore be vacated. Relatedly, Cook contends that the trial court accepted his guilty plea in violation of Crim.R. 11(C)(2). In his fourth assignment of error, Cook argues that trial court's consecutive

sentencing findings were not supported by the factual record and that the sentencing entries do not comport with R.C. 2929.14(C)(4). In his fifth assignment of error, Cook posits that the trial court failed to provide the required Reagan Tokes Law notifications at sentencing. We consider these assignments in turn.

### *Sufficient Evidence*

**{¶16}** In his first assignment of error, Cook argues that his conviction for possession of heroin in the case numbered B-2204873-B was not based on sufficient evidence. More specifically, Cook contends that he cannot be convicted solely based on his close proximity to drugs found in the passenger door pocket of the red Honda.

**{¶17}** The relevant inquiry when considering the sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the necessary elements of a given crime to have been proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.).

**{¶18}** Because the drugs were not found in Cook's actual possession, the ultimate question is whether sufficient evidence supports the trial court's determination that Cook constructively possessed the drugs. R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶19}** This court has previously held that constructive possession exists where a defendant has "knowledge of an illegal substance or goods and the ability to exercise dominion or control over the substance or the premises on which the substance is found." *State v. Williams*, 2023-Ohio-4667, ¶ 13 (1st Dist.), quoting

*State v. Harris*, 2013-Ohio-484, ¶ 18 (8th Dist.). Knowledge may in turn be inferred based upon a defendant's control and awareness of the premises. *Id.* at ¶ 15, citing *State v. Thomas*, 2003-Ohio-1185, ¶ 11 (1st Dist.) (inferring driver's knowledge where drugs were wedged between the driver's seat and the seat lever, given driver's physical control of the area and proximity to the drugs), and *State v. Trembly*, 137 Ohio App.3d 134, 141 (8th Dist. 2000) (holding that driver's arm's-length proximity to crack pipe and crack cocaine were sufficient to establish knowledge).

{¶20} However, this court has also held that mere proximity is not dispositive in determining constructive possession. *Id.* at ¶ 14, citing *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.). Thus, while insufficient to establish constructive possession standing on its own, proximity to contraband is therefore one factor in considering whether a defendant constructively possessed contraband. *Id.*, citing *State v. Devaughn*, 2020-Ohio-651, ¶ 33 (1st Dist.).

{¶21} Applying these principles here, and viewing the evidentiary record in a light most favorable to the State, there is sufficient evidence to establish that Cook constructively possessed heroin.

{¶22} First, there is sufficient evidence that Cook had knowledge of the drugs. Given that the drugs were in plain view in the passenger door pocket immediately adjacent to where Cook was seated, we can infer that Cook had knowledge the drugs were present in the car. *See Williams*, 2023-Ohio-5667, at ¶ 15 (1st Dist.), citing *Thomas*, 2003-Ohio-1185, at ¶ 11 (1st Dist.).

{¶23} Second, there is sufficient evidence that Cook exhibited control and dominion over the drugs. Along with the drugs, officers found numerous cell phones in the vehicle, including one in the seat where Cook was a passenger and two in the passenger door compartment where the drugs were located. Abt testified this was

typical of drug trafficking activity. Cook was also in possession of $511 in cash, and the driver was found with $4,171. In a similar case involving drugs located in a vehicle, along with cell phones, digital scales, and a large quantity of cash, we held that there was sufficient evidence of constructive possession. *See id*. at ¶ 19-20. We reach the same conclusion here.

{¶24} In reaching this conclusion, we are mindful of the fact that the driver, who made a statement that the contraband in the vehicle belonged to him, was unable to identify what the vehicle contained. The driver's unfamiliarity with the contents of the car further suggests that Cook constructively possessed the drugs found in the passenger door.

{¶25} Thus, contrary to Cook's argument, his conviction was not based solely on his proximity to contraband. Cook's implied knowledge of the drugs, the presence of numerous cell phones in the vehicle, the cash found on Cook and the driver, and the driver's lack of knowledge were sufficient to support Cook's conviction for possession of heroin. We accordingly overrule his challenge to the sufficiency of the evidence in the case numbered B-2204873-B.

### *Manifest Weight*

{¶26} Cook next contends that his conviction was against the manifest weight of the evidence. Like Cook's sufficiency argument, we find this argument unpersuasive.

{¶27} When reviewing whether a conviction is against the manifest weight of the evidence, we sit as the "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 2018-Ohio-1903, ¶ 14. In evaluating a manifest weight challenge, the appellate court reviews

the entire record, weigh[s] the evidence and all reasonable inferences, consider[s] the credibility of the witnesses and determine[s] whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal citations omitted.) *State v. Morris*, 2023-Ohio-4622, ¶ 26 (1st Dist.). Reversal of the trial court's decision and granting of a new trial is a very limited remedy that is only afforded in "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *Thompkins* at 387.

{¶28} Considering the entirety of the evidence presented in the case numbered B-2204873-B, it is clear that the trier of fact did not lose its way in convicting Cook of drug possession. Cook was found in the passenger seat of a car that contained drugs in plain view in the passenger door pocket and numerous cell phones in the passenger compartment. Cook also had a large amount of cash on his person. The driver, who also had a large amount of cash, was not able to identify the items that were in the car. Cook's conviction was not against the manifest weight of this evidence.

{¶29} We accordingly overrule the first assignment of error.

### *Guilty Plea*

{¶30} In Cook's second and third assignments of error, Cook argues that the trial court erred in accepting his guilty plea in the case numbered B-2205972. More specifically, Cook argues that his plea was not made knowingly, voluntarily, and intelligently and that it was not in compliance with Crim.R. 11(c)(2). In support of this contention, he points to the trial court's failure to advise him that the charges to

which he was pleading guilty carried a mandatory consecutive sentence and the mandatory suspension of his driver's license.

**{¶31}** We review the record de novo to determine whether the trial court followed the relevant constitutional and procedural standards in accepting Cook's guilty plea. *State v. Mathews*, 2024-Ohio-1863, ¶ 13 (1st Dist.).

**{¶32}** Crim.R. 11(C) requires the trial court to advise a defendant who intends to plead guilty of certain constitutional and nonconstitutional rights. A trial court must strictly comply with the rule with regard to constitutional rights. *Id.*, citing *State v. Foster*, 2018-Ohio-4006, ¶ 14-16 (1st Dist.). But with regard to nonconstitutional rights, such as the nature of the charges and the maximum penalty, a trial court need only substantially comply with the substance of Crim.R. 11(C). *Id.* With regard to nonconstitutional rights, the crux of the inquiry is that "the defendant subjectively underst[ands] the implications of his plea and rights" being waived. *Foster* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

**{¶33}** Where a trial court fails to substantially comply with Crim.R. 11(C) in the context of nonconstitutional rights, a defendant must demonstrate prejudice. *State v. Dangler*, 2020-Ohio-2765, ¶ 13. Prejudice occurs in the Crim.R. 11 context when a defendant would not have entered the plea absent the trial court's error. *See id.* at ¶ 24. A defendant need not show prejudice, however, when a trial court completely fails to cover the nonconstitutional rights described in Crim.R. 11(C)(2). *Id.* at ¶ 14. Thus, where a trial court completely fails to provide notice of a nonconstitutional right during a Crim.R. 11(C) plea colloquy, the defendant's plea should be vacated regardless of whether the defendant was prejudiced. *Id.* at ¶ 15-16.

{¶34} In the context of the requirement under Crim.R. 11(C)(2)(a) that a defendant be advised of the maximum penalty, "a complete failure . . . involves a trial court's complete omission in advising about a distinct component of the maximum penalty." *State v. Harris*, 2021-Ohio-1431, ¶ 22 (2d Dist.), quoting *State v. Rogers*, 2020-Ohio-4102, ¶ 19 (12th Dist.). Where, on the other hand, a trial court mentions a component of the maximum penalty during the plea colloquy, even if the trial court's advisement is incomplete or even inaccurate, the trial court does not completely fail to comply with Crim.R. 11(C). *Id.*

{¶35} Cook argues that his plea colloquy was defective in two respects. First, he contends that the trial court failed to advise him that he faced a mandatory consecutive sentence on Count 6, the failure to comply charge. Second, he contends that the trial court failed to advise him that his guilty plea would trigger a mandatory driver's license suspension.

{¶36} With regard to Cook's exposure to a mandatory consecutive sentence, the record reveals that the trial court failed to advise Cook as to this specific sentence. It did inform Cook of the maximum penalty on each count to which he was pleading guilty. To this end, the trial court told Cook that he faced between eight and 12 years in prison for Count 1, between six and 12 months for Count 4, and between nine and 36 months for Count 6. Without explanation, it then calculated his maximum total exposure as 12 years in prison. But it did not advise him that he was subject to consecutive sentences in general, nor did it discuss that the failure to comply count carried its own mandatory consecutive term of imprisonment under R.C. 2929.331(D).

{¶37} Our case law is silent as to whether the failure to advise the defendant of a mandatory consecutive sentence constitutes a total failure under Crim.R. 11(C).

But other appellate districts have indicated that it does. For example, in *State v. Norman*, 2009-Ohio-4044, ¶ 13 (8th Dist.), the Eighth District held that the failure to advise a defendant of the mandatory nature of a consecutive sentence violated Crim.R. 11(C) because it undermined the defendant's understanding of the maximum penalty. Its holding occurred in the specific context of R.C. 2921.331(D), the statute that imposes the mandatory consecutive sentence for the failure to comply charge to which Cook pleaded guilty in Count 6. *Id.* The Ninth District reached an identical conclusion in *State v. Tannack*, 2022-Ohio-880, ¶ 12-13 (9th Dist.) (holding that failure to advise defendant of mandatory consecutive sentence on failure to comply charge under R.C. 2921.331(D) violated Crim.R. 11(C)). In *Tannack*, the court excused the prejudice requirement, because the trial court had said nothing about a mandatory sentence at all and had thus completely failed to comply with the rule. *Id.*

{¶38} Like our fellow appellate courts, we agree that the failure to advise a defendant that a guilty plea to a failure to comply charge carries a mandatory consecutive sentence under R.C. 2921.331(D) violates Crim.R. 11(C). This is the case because a defendant who does not understand that a mandatory prison term will be added to any other term of incarceration cannot understand the maximum sentence created by a guilty plea. *See Norman*, 2009-Ohio-4044, at ¶ 12.

{¶39} Here, the trial court entirely failed to advise Cook of the mandatory consecutive sentence that attached to his failure to comply guilty plea, and thus he was not accurately informed of the maximum sentence he faced. Neither the plea form Cook executed nor the trial court at sentencing notified Cook that his guilty plea to the failure to comply charge carried a mandatory consecutive sentence. As a

result, based on the record before us, Cook was not able to fully comprehend the sentencing consequences created by his guilty plea.

{¶40} We therefore sustain Cook's second and third assignments of error. This holding renders moot Cook's argument regarding the lack of notifications regarding the mandatory driver's license suspension.

### *Consecutive Sentencing Findings*

{¶41} In his fourth assignment of error, Cook challenges the trial court's imposition of consecutive sentences. He contends that the trial court's imposition of consecutive sentences was not supported by the facts in the record and that the trial court's sentencing entries were defective because they failed to contain the consecutive sentencing findings required R.C. 2929.14(C)(4).

{¶42} Cook received no consecutive sentences in his individual cases. Rather, the trial court determined that his sentences in each of two separate criminal cases should be served consecutively to one another. Our decision sustaining Cook's second and third assignments of error and reversing his convictions in the case numbered B-2205972 therefore renders this assignment of error moot. We accordingly decline to consider it.

### *Sentencing Requirements of R.C. 2929.19(B)(2)(c)*

{¶43} In his fifth and final assignment of error, Cook argues that the trial court erred when it failed to provide notifications required by the Reagan Tokes Law ("RTL") at sentencing. To the extent this assignment of error relates to Cook's convictions in the case numbered B-2205972, his argument is moot, as we have reversed Cook's convictions in that case. We consider his assignment of error solely in the context of the case numbered B-2204873-B.

**{¶44}** The RTL governs sentencing for first- and second-degree felony offenses that do not have a life sentence as an option. *State v. Jackson*, 2022-Ohio-3449, ¶ 20 (1st Dist.). Pursuant to the RTL, sentencing courts must impose an indefinite sentence for these offenses, ranging between a stated minimum included in R.C. 2929.14(A) and a calculated maximum as stated in R.C. 2929.144. *Id.* at ¶ 11. To comply with the RTL, a trial court must advise the defendant at the sentencing hearing of the five notifications set forth in R.C. 2929.19(B)(2)(c)(i)-(v). *Id.* at ¶ 20.

**{¶45}** Cook argues, and the State concedes, that the trial court failed to make these advisements at sentencing. We therefore sustain Cook's fifth assignment of error in part. The case numbered B-2204873-B is remanded for resentencing for the trial court to comply with the RTL's notification provisions.

### *Conclusion*

**{¶46}** For the foregoing reasons, we overrule Cook's first assignment of error and affirm his conviction in the case numbered B-2204873-B. We sustain his second and third assignments of error in the case numbered B-2205972, vacate Cook's guilty plea, and remand the cause to the trial court. Our decision as to Cook's second and third assignments of error renders Cook's fourth assignment of error moot, and we decline to address it. With regard to his fifth assignment of error, we sustain it in part and remand the case numbered B-2204873-B for resentencing for the sole purpose of providing RTL notifications.

Judgment accordingly.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:
    The court has recorded its own entry this date.