[Cite as *State v. Johnson*, 2025-Ohio-149.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-240142 |
| | | | C-240143 |
| Plaintiff-Appellee, | : | TRIAL NOS. | B-2201011 |
| | | | B-2103844 |
| vs. | : | | |
| DOMICO JOHNSON, | : | | |
| | | *O P I N I O N* | |
| Defendant-Appellant. | : | | |


Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: January 22, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Jon R. Sinclair*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Domico Johnson accepted a plea deal to four third-degree felony offenses—two counts each in two separate cases. The agreed-upon, recommended sentence on each count was one year in prison, with three of those years to run concurrently and one to run consecutively, for a total of 24 months in prison.

{¶2} In one assignment of error, Johnson challenges the voluntariness of his pleas, asserting (1) that the trial court failed to inform him during the plea colloquy that one of his prison sentences was required to run consecutively to his other prison sentences and (2) that the trial court incorrectly informed him about the mandatory driver's license suspension required by one of his convictions.

{¶3} Johnson is correct; the trial court erred in both respects during his plea colloquy. However, because the trial court at least partially complied with Crim.R. 11(C), and because Johnson has failed to show that he was prejudiced by the error, we overrule Johnson's sole assignment of error and affirm his convictions.

## I. BACKGROUND

{¶4} On August 4, 2021, Domico Johnson was charged in a four-count indictment with one count each of having a weapon under a disability, R.C. 2923.13(A)(3); tampering with evidence, R.C. 2921.12(A)(1); aggravated trafficking in methamphetamine, R.C. 2925.03(A)(2); and aggravated possession of methamphetamine, R.C. 2925.11(A). All four offenses were charged as third-degree felonies, and all were alleged to have occurred "on or about" July 27, 2021.

{¶5} On March 11, 2022, Johnson was indicted again on seven more charges—two counts of first-degree felony trafficking in a fentanyl-related compound under R.C. 2925.03(A)(2), two counts of first-degree felony possession of a fentanyl-related compound under R.C. 2925.11(A), one count of second-degree felony

trafficking in heroin under R.C. 2925.03(A)(2), one count of second-degree felony possession of heroin under R.C. 2925.11(A), and one count of failing to comply with an order or signal of a police officer under R.C. 2921.331(B), charged as a third-degree felony. The failure-to-comply charge stemmed from an incident on October 5, 2021, while the other six arose out of conduct occurring "on or about" September 21, 2021.

**{¶6}** Then began this case's long and somewhat tortured pretrial history. Following two and a half years of revolving-door appointed counsel, allegations of deficiency, a period of self-representation, and repeatedly continued proceedings, Johnson entered into a negotiated plea agreement and, on the eve of his trial in February 2024, twice attempted to plead guilty.

**{¶7}** The first of Johnson's two plea hearings took place on a Friday. During that hearing, Johnson had suggested he did not wish to plead, but was doing so because he lacked faith that his attorneys would fight for him. He said he was willing to plead guilty if his alternative was going to trial with his then-current counsel, but only because he felt trapped by his inability to find counsel he trusted. Based on these and similar conflicting statements, the trial court was not confident that Johnson's waiver of his trial rights was knowing, intelligent, and voluntary, and so it refused to accept his guilty pleas.

**{¶8}** The following Monday, Johnson appeared in court once again to plead guilty. When asked what had changed over the weekend, Johnson replied, "Just the conversation with my kids and my mother and my girlfriend. Just family members told me to make a better decision." Johnson did not raise any of his previously-voiced concerns with his attorneys.

**{¶9}** Counsel for the State explained the plea agreements that Johnson had signed. Under the agreements, the State agreed to dismiss 7 of the 11 pending charges,

3

and Johnson agreed to plead guilty to the remaining four. In the case numbered B-2103844, he pled guilty to the weapons-under-a-disability charge and the aggravated-methamphetamine-trafficking charge, both felonies of the third degree. And in the case numbered B-2201011, Johnson pled guilty to one count of trafficking in a fentanyl-related compound, which the State agreed to reduce to a third-degree felony, and one count of failure to comply with an order or signal of an officer, also a third-degree felony. Johnson and the State agreed to a recommended sentence of one year on each of the four counts, three to run concurrently, and the fourth (for the failure-to-comply charge) to run consecutively, for a total of two years in prison.

{¶10} During the plea colloquy, the trial court made sure that Johnson understood that it had the power to sentence him to more prison time than the parties agreed to in the plea agreements. It also advised him that "the maximum penalty on each count on each case is 36 months in prison and a $10,000 fine," and that "[o]n the failure to comply charge on the B22 case, there is an additional potential penalty, a suspension of your driver's license, between five months and six years." The trial court confirmed that Johnson understood the constitutional rights he was waiving, and that he had read and understood his signed plea-agreement forms. After finding that Johnson had "made a knowing, intelligent, and voluntary waiver" of his rights, the trial court accepted his guilty pleas.

{¶11} The parties waived the presentence investigation, and the trial court imposed the aggregate 24-month sentence agreed upon by the parties, crediting Johnson for time-served—125 days in the case numbered B-2103844 and 115 days in the case numbered B-2201011. The court then stayed execution of its judgment for about a month, to give Johnson time to make arrangements for the care of his children and to attend his girlfriend's graduation.

**{¶12}** This appeal timely followed.

## II. CRIM.R. 11 ANALYSIS

**{¶13}** In his sole assignment of error, Johnson contends that his guilty pleas were not knowing, intelligent, and voluntary. First, he argues that the trial court failed to inform him that, under R.C. 2921.331, he was required to serve any prison term imposed for his failure-to-comply violation consecutively to all other prison sentences. Second, he argues that the trial court failed to inform him that suspension of his driver's license was mandatory and misstated the length of the suspension. He argues that these failures caused him to plead without "understanding . . . the maximum penalty involved," in violation of Crim.R. 11(C)(2)(a).

**{¶14}** "Because a guilty plea operates as a waiver of several constitutional rights, the validity of a guilty plea turns on whether that plea was done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." (Cleaned up.) *State v. Davis*, 2023-Ohio-4389, ¶ 7 (1st Dist.); *see Boykin v. Alabama*, 395 U.S. 238 (1969). "To determine whether a plea was entered knowingly, voluntarily, and intelligently, an appellate court examines the totality of the circumstances through a de novo review of the record." (Cleaned up.) *State v. Davis*, 2024-Ohio-2793, ¶ 15 (1st Dist.).

**{¶15}** "Crim. R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). The Ohio Supreme Court has held that Crim.R. 11 "fully encompasses those procedural requirements established by the United States Constitution." *State v. Johnson*, 40 Ohio St.3d 130, 133 (1988), citing *State v. Stewart*, 51 Ohio St.2d 86, 88 (1977).

**{¶16}** When appellants challenge the voluntariness of their pleas under

Crim.R. 11, "reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy." *State v. Clark*, 2008-Ohio-3748, ¶ 30.

**{¶17}** This analysis includes determining whether the trial court adequately complied with Crim.R. 11's constitutional requirements, as well as its nonconstitutional, or rule-based requirements. Johnson argues that the trial court failed to comply with Crim.R. 11 by failing to determine that he understood the maximum penalties involved. The maximum-penalty provision in Crim.R. 11(C)(2)(a) is one of the rule's nonconstitutional requirements, *State v. Dangler*, 2020-Ohio-2765, ¶ 23, and requires a trial court to "determin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." Crim.R. 11(C)(2)(a).

**{¶18}** We recently clarified the procedure for assessing a trial court's compliance with Crim.R. 11's nonconstitutional requirements in *State v. Walker*, 2024-Ohio-6079, ¶ 28 (1st Dist.):

> [I]f we find that the trial court did not comply with a nonconstitutional provision of Crim.R. 11, then we jump straight to determining "whether the trial court *partially complied* . . . with the rule," or "*failed* to comply" with it entirely. (Emphasis sic.) [*Clark* at ¶ 32]; *accord State v. Veite*, 2021-Ohio-290, ¶ 16 (1st Dist.). If the trial court's advisement amounted to a complete failure to comply with the rule, then the defendant's plea will be deemed per se involuntary. *See Clark* at ¶ 32; *Veite* at ¶ 16-17; *Dangler* at ¶ 15. Otherwise, if the trial court partially complied, the defendant must show that the error prejudiced his decision to plead

6

guilty before it can be overturned. *See Dangler* at ¶ 16.

**{¶19}** *Walker* also clarified the sometimes-murky line between a complete failure to comply and partial compliance in the maximum-penalty context. A violation of that provision constitutes a complete failure to comply if it "'involves a trial court's complete omission in advising [the defendant] about a distinct component of the maximum penalty.'" (Bracketed text in original.) *Walker* at ¶ 29, quoting *State v. Cook*, 2024-Ohio-4771, ¶ 34 (1st Dist.). Thus, we said, "a trial court completely fails to comply with Crim.R. 11(C)(2)(a) when it neglects to inform a defendant about *a class of penalties* they may suffer." (Emphasis added.) *Id.* For example, if a trial court completely fails to mention the maximum prison term a defendant is facing, or that the defendant may be subject to a fine or postrelease control, then that is considered a complete failure to comply with the maximum-penalty provision. *Id.*, citing *State v. Wilson*, 2024-Ohio-1290, ¶ 17 (1st Dist.), *State v. Rogers*, 2020-Ohio-4102, ¶ 23 (12th Dist.), and *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. But a trial court is deemed to have partially complied with Crim.R. 11(C)(2)(a) if it mentions all components of the maximum penalty during the plea colloquy, even if the advisement as to any one is incomplete or inaccurate. *Id.* at ¶ 30 and 39.

### *Mandatory Consecutive Sentences*

**{¶20}** Johnson contends he was "not informed that if he was sentenced to a prison term" for his failure-to-comply offense under R.C. 2921.331(B), that prison term would have to "run consecutive to any other prison term." He argues that the trial court thus failed to uphold its responsibility under Crim.R. 11(C) to ensure he understood "the maximum penalty involved" in entering his pleas, rendering his pleas involuntary.

**{¶21}** Johnson was convicted under the 2021 version of Ohio's failure-to-

comply statute, with a harmful/dangerous conduct enhancement under R.C. 2921.331(C)(5).[1] With this enhancement, his offense became a third-degree felony and had to be served "consecutively to any other prison term." Former R.C. 2921.331(D). Ohio courts have held that this "consecutive service mandate applies where," as here, "a defendant is being sentenced in two or more separate cases." *State v. Smith*, 2020-Ohio-914, ¶ 10 (8th Dist.); *accord, e.g., State v. Jeffery*, 2011-Ohio-2654, ¶ 48 (5th Dist.) (holding that "R.C. 2921.331(D) mandates a sentence consecutive to appellee's prior sentences" imposed for other cases in other counties).

**{¶22}** We hold that the trial court's failure to inform Johnson that any prison sentence for the failure-to-comply charge must be served consecutively to any other prison sentence violated Crim.R. 11(C)(2)(a)'s maximum-penalty provision. This result is dictated by our recent decision in *Cook*, 2024-Ohio-4771, at ¶ 38 (1st Dist.), in which we held "that the failure to advise a defendant that a guilty plea to a failure to comply charge carries a mandatory consecutive sentence under R.C. 2921.331(D) violates Crim.R. 11(C)." The *Cook* rule is rooted in the qualitative difference between, on the one hand, a sentence that may be "up to 36 months" and, on the other, a sentence that could run for "up to 36 months, *to be served consecutively with any other sentence.*" Thus, we have held that a "defendant who does not understand that a mandatory prison term will be added to any other term of incarceration cannot understand the maximum sentence created by a guilty plea." *Id.* at ¶ 38, citing *State v.*

---

[1] The crimes to which Johnson pleaded guilty occurred between July 2021 and October 2021, but the relevant sentencing statutes and provisions have changed slightly since that date. Unless otherwise stated, the amendment of a statute will not "[a]ffect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment," unless that "penalty, forfeiture, or punishment for any offense is reduced by" the amendment. R.C. 1.58(A)(3) and (B). Because the amended versions of the statutes dictating Johnson's sentences in this case do not purport to be retroactive, and because they do not lighten the penalty, punishment, or forfeiture imposed, we apply the sentencing provisions in effect on the dates in the indictment.

*Norman*, 2009-Ohio-4044, ¶ 12 (8th Dist.).

{**¶23**} Despite failing to mention the mandatory consecutive character of the failure-to-comply sentence, the trial court in this case did not *entirely* fail to mention a class of penalties that could come with Johnson's maximum sentence. Under *Cook*, the maximum prison term a defendant faces on a failure-to-comply charge is not merely the number of years he might be incarcerated, but also the fact that those years *must* run consecutively to any other sentence. *See id.* at ¶ 38. Thus, the failure to disclose that a sentence must run consecutively misses a *part* of the maximum prison term a defendant may face. So, by otherwise "discussing [Johnson's] maximum potential prison exposure [on the failure-to-comply charge]—however inaccurately or incompletely—the trial court at least partially complied with the rule." *See Walker*, 2024-Ohio-6079, at ¶ 39 (1st Dist.).

{**¶24**} "[W]here the trial court has partially complied with the rule's nonconstitutional dictates, we must assess whether its partial deficiency had 'a prejudicial effect' on the defendant." *Id.* at ¶ 31, quoting *Clark*, 2008-Ohio-3748, at ¶ 32. This means that Johnson must show that, "but for the violation of Crim.R. 11," he would not have entered his guilty pleas. *See id.*, citing *Sarkozy*, 2008-Ohio-509, at ¶ 20. "If the defendant was prejudiced, then his plea must be vacated as involuntary under Crim.R. 11." *Id.*

{**¶25**} Johnson asserts that he would not have pled guilty and would have proceeded to trial, had he been properly apprised of the fact that his failure-to-comply sentence would have to run consecutively. But Johnson offers no explanation of why this fact would have altered his decision, and points to no other evidence of prejudice.

{**¶26**} In fact, the record contains evidence that Johnson had actual knowledge that any prison sentence for his failure-to-comply charge had to run consecutively to

his remaining charges. During a plea hearing just three days prior, at which the court rejected Johnson's guilty pleas, Johnson himself explained that, if he were to go to trial and be found guilty of all counts, his minimum prison exposure would have been "three years and nine months." The most obvious way for Johnson to have reached this total would have been to run all of his possible sentences concurrently, except for one third-degree felony—like the failure-to-comply offense.[2] If this is how Johnson understood his minimum term, it suggests he knew at least one third-degree felony carried a mandatory consecutive prison term. In addition, the record demonstrates instances during prior hearings when Johnson's lawyer referenced the mandatory consecutive sentence for the failure-to-comply offense explicitly.

{¶27} The agreed sentences recommended in Johnson's plea-change forms also suggest that Johnson knew about the mandatory consecutive sentence for the failure-to-comply charge. Johnson's pleas involved four charges in two cases. On the two change-of-plea forms, both of which bear Johnson's signature, Johnson agreed to a cumulative 24-month sentence, comprised of three 12-month sentences to run concurrently, and one 12-month sentence to run consecutively. The agreements specified the failure-to-comply sentence as the one running consecutively.

{¶28} Ultimately, the burden falls on Johnson to show that he suffered prejudice from the trial court's failure to follow Crim.R. 11 precisely. *See Walker*, 2024-Ohio-6079, at ¶ 40 (1st Dist.) ("Walker bears the burden of demonstrating that, but for [the violation of Crim.R. 11(C)], he would not have pled guilty."). Johnson has

---

[2] Johnson's indictments, prior to the pleas, contained several first-degree felonies, which carried mandatory minimum terms of three years each. *See* former R.C. 2929.14(A)(1)(a). As such, if Johnson received all minimum sentences, and if those sentences ran concurrently, then his term would have been three years. However, because the failure-to-comply charge had to be run consecutively, Johnson had stacked its minimum sentence of nine months on top of the three years, *see* former R.C. 2929.14(A)(3)(b), and thereby arrived at his total minimum term of three years and nine months.

not offered such evidence. Instead, the record suggests that he had actual knowledge of the mandatory consecutive sentence he faced, and Johnson has offered nothing to refute that inference. We therefore hold that Johnson has failed to demonstrate that the trial court's partial deficiency prejudiced his decision to plead guilty.

**{¶29}** This conclusion does not contradict our holding in *Cook*, 2024-Ohio-4771 (1st Dist.). In that case, we held that the trial court had "entirely failed to advise Cook of the mandatory consecutive sentence that attached to his failure to comply guilty plea." *Id.* at ¶ 39. At first blush, this language might suggest that we held the trial court in *Cook* had completely failed to comply with Crim.R. 11(C). However, further examination of *Cook* reveals that we actually found partial compliance.

**{¶30}** After concluding in *Cook* that the trial court's plea colloquy had been deficient, we proceeded to note that "[n]either the plea form Cook executed nor the trial court at sentencing" had mentioned the mandatory consecutive sentence, before holding that, "based on the record before us, Cook was not able to fully comprehend the sentencing consequences created by his guilty plea." *Id.* We do not examine plea agreements to assess a trial court's compliance with Crim.R. 11(C), partial or otherwise. *See Wilson*, 2024-Ohio-1290, at ¶ 17 (1st Dist.) ("Although the plea form he signed included the maximum sentence, Crim.R. 11 requires the trial court to personally address the defendant and inform him of the maximum sentence during the plea colloquy."); *see also State v. Gipson*, 1998 Ohio App. LEXIS 4687, *9-10 (1st Dist. Sept. 30, 1998) (describing how this court "examine[s] compliance with Crim.R. 11 by examining the trial court's communication to the defendant, not the defendant's subjective understanding of his rights"). Our examination of the plea agreement in *Cook*, therefore, was done to determine whether Cook had suffered prejudice. And our further discussion of how the trial court had miscalculated Cook's aggregate sentence

likewise served to illustrate the prejudice he suffered from this omission. *See Cook* at ¶ 36.

**{¶31}** Reaching the question of prejudice in *Cook* means that we did not believe that the trial court had completely failed to comply with Crim.R. 11(C). Because, in *Cook*, we had no evidence of the defendant's actual knowledge, we found it relatively easy to see how a failure to mention a mandatory-consecutive-sentence requirement would have prejudiced the defendant's plea decision.

**{¶32}** Thus, we hold that the trial court in this case partially complied with its duty under Crim.R. 11(C) by informing Johnson of the maximum duration of his sentences, despite failing to inform him that the sentence for his failure-to-comply charge had to run consecutively. And we further hold that Johnson has not demonstrated that he was prejudiced by this deficiency.

### *Period of License Suspension*

**{¶33}** Johnson also argues that his pleas were involuntary because he was not "correctly advised of a mandatory driving suspension" for the failure-to-comply charge.

**{¶34}** Under the then-current version of R.C. 2921.331, "[i]n addition to any other sanction imposed for a felony violation of [R.C. 2921.331(B)], the court *shall* impose a class two suspension from the range specified in [R.C. 4510.02(A)(2)]." (Emphasis added.) Former R.C. 2921.331(E). R.C. 4510.02(A)(2), in turn, allows a court to suspend a driver's license for "a definite period of three years to life."

**{¶35}** A suspension of the defendant's driver's license is part of "the maximum penalty involved" in entering a guilty plea, which the court must ensure the defendant understands under Crim.R. 11(C)(2)(a). *See, e.g., State v. Walz*, 2012-Ohio-4627, ¶ 12 (2d Dist.) (holding that trial court failed to comply with Crim.R. 11(C) by not informing

defendant of mandatory license suspension); *State v. Hendershot*, 2017-Ohio-8112, ¶ 28 (5th Dist.) (describing the defendant's "license suspension" as "a component of the maximum penalty for the charges"); *see generally State v. Fry-McMurray*, 2016-Ohio-6998, ¶ 20-26 (7th Dist.) (summarizing several cases addressing license suspensions under Crim.R. 11).

**{¶36}** During the plea colloquy, the trial court advised Johnson as follows:

> THE COURT: On the failure to comply charge on the B22 case, there is an additional potential penalty, a suspension of your driver's license, between five months and six years; do you understand that potential penalty?
>
> THE DEFENDANT: Yes, Ma'am.

This description was doubly wrong. First, it was wrong because the court referred to the suspension twice as a "potential penalty," when the statute uses mandatory language: "the court *shall impose* . . . a suspension." (Emphasis added.) Former R.C. 2921.331(E). Second, it was wrong because the range of suspension durations did not reflect the range from which the court was permitted to choose—the court said the suspension could range from five months to six years, while the relevant statutory provision set the range at "three years to life." R.C. 4510.02(A)(2).

**{¶37}** However, the trial court's failure of compliance was not "complete." The trial court attempted to inform Johnson of the driver's license penalties; it was just wrong about what those penalties were. *Compare Fry-McMurray* at ¶ 19, citing *Sarkozy*, 2008-Ohio-509, at ¶ 22-23 ("There is a difference between a complete failure to mention something like postrelease control and when there is some mention of it."); *accord Walker*, 2024-Ohio-6079, at ¶ 30 (1st Dist.). Because the trial court partially complied, we turn to the prejudice prong.

**{¶38}** Under the peculiar facts of this case, Johnson cannot show prejudice. True, the trial court's reference to license suspension was seriously inaccurate, both because it claimed that the suspension was discretionary and because it provided an inaccurate temporal range for that suspension. But the force of Johnson's objection is dampened when one realizes that the trial court *did not impose* the usually-mandatory driver's license suspension in his case. Nor did the State challenge that sentence or seek such a suspension—Johnson's signed plea agreements make no reference to any driver's-license suspension. And the trial court ultimately made no mention of any license suspension when it announced Johnson's sentences from the bench, nor in its journal entry imposing the sentences.

\* \* \*

**{¶39}** For the foregoing reasons, Johnson's sole assignment of error is overruled and the judgments of the trial court are affirmed.

Judgments affirmed.

**BOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.