**[Cite as *State v. Elston*, 2026-Ohio-958.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No.   {48}L-25-00053
      Appellee

                                             Trial Court No.  CR0202402112

v.

Darryl Elston                                        **DECISION AND JUDGMENT**

      Appellant                          Decided: March 20, 2026

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and,
Brenda J. Majdalani, Assistant Prosecuting Attorney,
for appellee/cross-appellant.

Anthony J. Richardson, for appellant/cross-appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Darryl Elston, appeals the March 4, 2025 judgment of the Lucas

County Court of Common Pleas sentencing him to nine months in prison.  For the

following reasons, we affirm in part and reverse in part.

### I. Background and Facts

{¶ 2} Elston was charged with one count each of having weapons while under

disability in violation of R.C. 2923.13(A)(2), a third-degree felony (count 1); failure to

comply with the signal of a police officer in violation of R.C. 2921.331(B), (C)(1), and

(C)(5)(a)(ii), a third-degree felony (count 2); and receiving stolen property in violation of

R.C. 2913.51(A), a fourth-degree felony (count 3). Elston and the State reached an agreement under which Elston would plead no contest to count 1, and the State would dismiss counts 2 and 3 at sentencing due to potential double jeopardy issues arising from Elston's conviction in Wood County of charges arising from the same incident.

{¶ 3} At the plea and sentencing hearing, before accepting Elston's no-contest plea, the trial court told Elston about the potential prison terms he was facing and that "[n]o portion of the prison term . . . [is] mandatory." However, because Elston had another sentence out of Wood County, the court explained that "there's some components of those sentences that will overlap[,]" so the court did not "know exactly what [his] outdates would be until ODRC calculates." Elston indicated that he understood those things.

{¶ 4} After conducting a thorough Crim.R. 11 plea colloquy and accepting Elston's no-contest plea, the trial court sentenced him to nine months in prison "of which zero is mandatory." Before ordering Elston to serve his sentence in this case consecutively to his sentence out of Wood County, the court had the following conversation with court staff and Elston:

> THE COURT: Missy, I'm just trying to get a calculation. In terms of Judge Reger's sentence at 49 months, my nine months minus 231, will they calculate the 231 off the top and a remainder would be consecutive if ordered consecutive?
>
> [STAFF]: Judge, so I believe the way that I've seen it in the past, separate cases, he can only get—like your credit only applies for your case. So I believe that until he served Judge Reger's portion, if do you consecutive, then yours doesn't even kick in, if that makes sense.

2.

THE COURT: But he's not going to get—that's my concern is that, I know Judge Reger wants his sentence to remain intact, he was thinking ours may run concurrent, depending on what was happening. I just wanted to see. You don't think that, from a calculation point of view, my days will kick in to separate out until and I know they wouldn't kick in on his time.

[STAFF]: Yeah, I don't think they will. It looks like 273 is a nine-month sentence.

THE COURT: So, I mean, it would just be an additional 60 days. That shouldn't kick him over if there's a judicial release. If he's at 49, 51, 52 months. I just want to make sure that his motion practice is available for Judge Reger.

[STAFF]: It's just got to be under 60 months, Judge.

THE COURT: I think it's 60.

[STAFF]: He has to file.

THE COURT: He has to file both places.

THE DEFENDANT: So I have to serve his—

THE COURT: No. You just have to file both places. There's a magic number in there that if we go over, then you don't get access to a judicial release. I wanted to make sure I didn't tip you through that process. So mine will be consecutive with credit for 231 days, and a total nine-month sentence is just a little over 270, so there's only about 60 days left on my sentence.

{¶ 5} Regarding postrelease control, the court told Elston, "[i]f you were to serve a full sentence on this matter, you could face up to two years of post-release control." It also informed him of the consequences of violating postrelease control and what would happen if he were convicted of a new felony while on postrelease control.

{¶ 6} In its sentencing entry, the trial court ordered Elston to serve nine months in prison. It found that "this must be served consecutively to any other prison term imposed

3.

upon [Elston] pursuant to R.C. 2921.331 (D)[,]" so it ordered him to serve the prison term in this case consecutively to his prison terms in two cases out of Wood County.

{¶ 7} Regarding postrelease control, the court stated,

Defendant notified of post-release control as follows: Felony Sex Offense: 5 years mandatory; F-1: 2-5 years mandatory; F-2: 18 months-3 years mandatory; F-3 (offense of violence, R.C. 2901.01(A)(9)): 1-3 years mandatory; F-3 (other): up to 2 years discretionary; F-4: up to 2 years discretionary; F-5: up to 2 years discretionary. Defendant further notified that if post-release control conditions are violated, the adult parole authority or parole board may impose a more restrictive or longer control sanction or return Defendant to prison for up to nine months for each violation, up to a maximum of 50% of the minimum stated term originally imposed. Defendant further notified that if the violation is a new felony conviction, Defendant may be both returned to prison for the greater of one year or the time remaining on post-release control, plus receive a prison term for the new felony (-ies).

{¶ 8} Finally, the court noted that "[p]ursuant to the request of the State of Ohio a nolle prosequi is entered as to Count 2[.]"

{¶ 9} Elston now appeals, raising two assignments of error:

(1.) THE TRIAL COURT COMMITTED ERROR BY ACCEPTING APPELLANT'S PLEA OF GUILTY WITHOUT INFORMING HIM ABOUT THE MANDATORY IMPOSITION OF CONSECUTIVE SENTENCE.

(2.) THE TRIAL COURT COMMITTED ERROR BY SENTENCING APPELLANT TO MANDATORY CONSECUTIVE SENTENCE WHEN IT WAS IN FACT NOT MANDATORY, AND REMAND IS NECESSARY FOR RESENTENCING WHERE THE TRIAL COURT CAN INDICATE WHETHER IT WOULD DO SO CONSIDERING SUCH IMPOSITION IS NOT MANDATORY.

4.

{¶ 10} Additionally, the State filed a cross-appeal relating to Elston's sentence:

> First Assignment of Error
>
> The trial court erred when, in its sentencing entry, the court recited all of the possible terms of post-release control instead of reciting the appropriate term of post-release control specifically applicable to the defendant.
>
> Second Assignment of Error:
>
> The trial court failed to properly state in its sentencing entry that Count 3 of the indictment was also nollied by the State.

## II. Law and Analysis

### A. The trial court erred by imposing consecutive sentences as if they were mandatory.

{¶ 11} In Elston's second assignment of error, he argues that the trial court incorrectly imposed mandatory consecutive sentences, and we should remand this case for the court to determine if consecutive sentences under R.C. 2929.14(C)(4) are appropriate. The State responds that consecutive sentences were mandatory under R.C. 2921.331(D), so the trial court was not required to consider the factors in R.C. 2929.14(C)(4).

{¶ 12} Under R.C. 2921.331(D), "[i]f an offender is sentenced to a prison term for a violation of division (B) of [R.C. 2921.331], the offender shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender." This provision applies to convictions in separate cases, as well as to convictions in other counties. *State v. Johnson*, 2025-Ohio-149, ¶ 21 (1st Dist.), citing *State v. Smith*, 2020-Ohio-914, ¶ 10 (8th Dist.); and *State v. Jeffery*, 2011-Ohio-2654, ¶ 48 (5th Dist.). However, by its own terms, the provision only applies when the offender

5.

"*is* sentenced" for a violation of R.C. 2921.331(B). (Emphasis added.) Because the statute is written in the present tense, this indicates "acts, conditions, or states that occur in the present[.]" Garner, *The Chicago Guide to Grammar, Usage, and Punctuation,* § 173, at 95 (2016). Thus, for R.C. 2921.331(D) to apply, the offender must presently be sentenced for the violation of R.C. 2921.331(B). Conversely, if the offender is *not* currently being sentenced for a violation of R.C. 2921.331(B)—like Elston in this case— R.C. 2921.331(D) should not apply.

{¶ 13} This interpretation is supported by R.C. 2929.14(C)(3), which provides, "[i]f a prison term is imposed for . . . a felony violation of [R.C. 2921.331(B)], the offender shall serve that prison term consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." Like R.C. 2921.331(D), R.C. 2929.14(C)(3) requires the present imposition of a prison term for a violation of R.C. 2921.331(B) before the mandatory consecutive sentence provision is triggered. Further, we were unable to find any cases in which a trial court used R.C. 2921.331(D) to impose mandatory consecutive sentences when it did not also sentence the offender for a violation of R.C. 2921.331(B).

{¶ 14} Here, Elston was not sentenced for a violation of R.C. 2921.331(B). Thus, by its very terms, R.C. 2921.331(D) did not apply to Elston's sentence in this case to make consecutive sentences mandatory. If the trial court wanted Elston to serve his sentence in this case consecutively to his sentences from Wood County, it was required to make the appropriate findings under R.C. 2929.14(C)(4), which it did not do. Therefore,

6.

we find that the trial court erred by imposing consecutive sentences. Elston's second assignment of error is well-taken.

### B. The trial court was not required to warn Elston of the potential for consecutive sentences.

{¶ 15} In his first assignment of error, Elston argues that he did not enter his plea knowingly, intelligently, and voluntarily because the trial court did not inform him that he would be serving his sentence consecutively with the Wood County sentences before it accepted his plea.

{¶ 16} A plea of no contest in a criminal case "must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Under Crim.R. 11(C)(2), "felony defendants are entitled to be informed of various constitutional and nonconstitutional rights, prior to entering a plea." *State v. Griggs*, 2004-Ohio-4415, ¶ 6. When an appellant seeks to vacate his plea on appeal because

> the plea was not entered in a knowing, intelligent and voluntary manner due to the trial court's failure to comply with Crim.R. 11, "the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses [an appellant] from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the [appellant] met that burden?"

(Brackets in original.) *State v. Morgan*, 2021-Ohio-3996, ¶ 15 (6th Dist.), quoting *State v. Dangler*, 2020-Ohio-2765, ¶ 17. Unless the trial court fails to explain a constitutional right in Crim.R. 11(C)(2)(c) or completely fails to comply with a portion of Crim.R.

7.

11(C)—e.g., by failing to mention mandatory postrelease control, *State v. Sarkozy*, 2008-Ohio-509, ¶ 22—the appellant is required to show prejudice to have his plea vacated. *Dangler* at ¶ 13-16.

{¶ 17} Here, Elston contends that the trial court failed to comply with Crim.R. 11(C)(2)(a), which requires the court to ensure that the defendant is entering his plea "with understanding of the nature of the charges and of the maximum penalty involved . . . ." However, unless consecutive sentences are mandatory, "'[u]nder Ohio law, there is no requirement for the trial court to advise of the possibility that each individual sentence may be imposed consecutively, such that a plea can be considered as involuntary in the absence of such an advisement.'" (Brackets in original.) *State v. Whitman*, 2021-Ohio-4510, ¶ 30 (6th Dist.), quoting *State v. Cobbledick*, 2020-Ohio-4744, ¶ 6 (8th Dist.). Put another way, when consecutive sentences are discretionary under R.C. 2929.14(C)(4), a trial court's failure to inform a defendant that one prison term may be run consecutively to another is not a violation of Crim.R. 11(C)(2)(a). *Id.* at ¶ 31, citing *State v. Nave*, 2019-Ohio-1123, ¶ 12 (8th Dist.).

{¶ 18} We have already determined that consecutive sentences were not mandatory in Elston's case. Thus, the trial court was not required to warn Elston that it might impose consecutive sentences in order to comply with Crim.R. 11. Therefore, because the court complied with the relevant portions of the rule, Elston's no-contest plea was entered knowingly, intelligently, and voluntarily. Elston's first assignment of error is not well-taken.

8.

**C. The sentencing entry fails to properly notify Elston of postrelease control.**

{¶ 19} In its first cross-assignment of error, the State argues that the trial court failed to properly notify Elston of the term of postrelease control he is facing when he finishes his prison term because the trial court's sentencing entry lists the ranges of possible postrelease control terms associated with different levels of felonies, as opposed to stating that Elston is subject to a discretionary term of up to two years of postrelease control for his third-degree felony conviction. Because the court told Elston of the proper postrelease control term at his sentencing hearing, the State contends that the court's error can be corrected with a nunc pro tunc entry.

{¶ 20} We find that the trial court erred by failing to notify Elston of the term of postrelease control that it imposed at the sentencing hearing. When a trial court imposes a prison term on a defendant, it is required to notify the defendant at the sentencing hearing about postrelease control and is required to incorporate that notice into its sentencing judgment entry. *State v. Jordan*, 2004-Ohio-6085, ¶ 17, *overruled in part on other grounds by State v. Harper*, 2020-Ohio-2913. The notice the court incorporates into its sentencing entry must reflect the notice that it gave the defendant at the sentencing hearing. *State v. Qualls*, 2012-Ohio-1111, ¶ 19. When a defendant is notified about postrelease control at the sentencing hearing, but that notification is not properly reflected in the sentencing entry, the omission can be corrected with a nunc pro tunc entry. *Id.* at ¶ 24.

9.

{¶ 21} Here, the trial court correctly told Elston at his sentencing hearing that he will be subject to a discretionary term of up to two years of postrelease control upon his release from prison. The sentencing entry, which lists all possible terms of postrelease control, does not reflect the notice that the court gave Elston at the sentencing hearing. Moreover, we have previously determined that this type of postrelease control notification in the sentencing entry is clearly and convincingly contrary to law. *State v. Thomas*, 2026-Ohio-20, ¶ 55-56 (6th Dist.); *State v. Whitney*, 2025-Ohio-4978, ¶ 20 (6th Dist.). Because the trial court did not properly notify Elston of postrelease control in the sentencing entry, we must reverse and remand this case for the purpose of entering a nunc pro tunc entry that includes only the postrelease control term applicable to Elston. Therefore, we find that the State's first cross-assignment of error is well-taken.

### D. The trial court previously dismissed count 3.

{¶ 22} In its second cross-assignment of error, the State argues that the trial court failed to include dismissal of count 3 in the sentencing entry, despite granting the State's motion to dismiss both counts 2 and 3 at sentencing.

{¶ 23} The record indicates that the trial court granted the State's motion to dismiss count 3 at a pretrial hearing on February 27, 2025. Because the court dismissed this count before sentencing, there was no reason for the court to include its dismissal of count 3 in the sentencing entry. Therefore, the State's second cross-assignment of error is not well-taken.

10.

### III. Conclusion

{¶ 24} For the foregoing reasons, the March 4, 2025 judgment of the Lucas County Court of Common Pleas is affirmed in part, reversed in part, and remanded for a limited resentencing hearing. At the resentencing hearing, the trial court shall determine only if consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, shall make the necessary statutory findings. The judgment entry from the resentencing hearing shall include only the term of postrelease control applicable to Elston. The parties are ordered to divide the costs of this appeal equally under App.R. 24.

Judgment affirmed, in part,<br>
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.                                 _____
                                                        JUDGE

Gene A. Zmuda, J.            

                                                _____
Charles E. Sulek, J.                                            JUDGE
CONCUR.

                                                    _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.